## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                          )
**THOMAS M. KELLEY,**                     )
                                          )
      **Plaintiff,**       )
                                          )
**v.**                                    )        **C.A. NO. 05-10596-NMG**
                                          )
**TOWN OF PLYMOUTH, et al.,**             )
                                          )
      **Defendants.**      )
_____)


### OFFICE OF THE INSPECTOR GENERAL'S
### MOTION TO QUASH SUBPOENAS FOR DOCUMENTS AND TESTIMONY
### OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Pursuant to Fed.R.Civ.P. 45(c)(3)(A) and Fed.R.Civ.P. 26(b)(1), the Office of the

Inspector General ("IG") respectfully moves to quash the following subpoenas issued by the

plaintiff Thomas M. Kelley ("Kelley"):  (1) a subpoena directed to the Keeper of Records, which

commanded the Keeper of the Records to appear and testify on August 16, 2006, and to produce

and permit inspection and copying of certain documents ("Keeper of the Records and Document

Subpoena"); See Document Subpoena, dated July 20, 2006, attached as Exhibit ("Ex. A"); and

two subpoenas directed towards (2) Edward Quinn, a former Deputy Inspector General for

Investigations for the IG ("Quinn"), and (3) Daniel O'Neil, a current Assistant Deputy Inspector

General for the IG ("O'Neil"), calling for  them to appear and testify at depositions scheduled for

September 6, 2006.[1]  See Deposition Notice for Edward Quinn, dated July 20, 2006, attached as

Ex. B and Deposition Notice for Dan O'Neil, dated July 20, 2006, attached as Ex. C

---

[1]By agreement Joseph R. Gallitano, counsel to Kelley, and Assistant Attorney General, Christine A. Baily, counsel to the IG, the depositions were stayed pending their efforts to reach a resolution.  See IG's Motion to Enlarge Time to Object to Subpoenas and Stay Depositions, filed on August 29, 2006 and granted on September 19, 2006.

(respectively, the "Quinn Deposition Subpoena" and "O'Neil Deposition Subpoena" and collectively, the "Deposition Subpoenas").

The Document Subpoena should be quashed on the grounds that the IG is precluded by federal and state law from producing documents.  See Fed.R.Civ.P. 45(c)(2)(B); see also M.G.L. c. 66A, §§ 2(c), 2(k); M.G.L. 12A, § 13.  The Deposition Subpoenas should be quashed on the grounds that the discovery sought is burdensome in that it is otherwise available and not relevant to the subject matter of the above-captioned action.  In addition, the IG's proceedings are confidential under state law.

Because there is no basis for requiring depositions of these government officials in the circumstances presented, the IG respectfully asks this Court to quash these subpoenas.  In the alternative, the IG seeks a protective order to either (1) modify the subpoenas; or (2) allow the IG to provide an affidavit in lieu of complying with the subpoenas.

## FACTUAL AND PROCEDURAL BACKGROUND

1.    Kelley Files a Complaint Against Plymouth

On March 9, 2005, Kelley filed a verified complaint in Plymouth Superior Court, which was removed by the local defendants to this Court on March 28, 2005 ("Complaint").  Kelley's allegations arise out of his employment with the Town of Plymouth Police Department (respectively "Plymouth" and the "Police Department").  Complaint at ¶ 5.  Kelley alleges that Chief Robert Pomeroy ("Chief Pomeroy") ordered him to participate in a drill on May 25, 2003, despite a substantial record of physical impairment.  Complaint at ¶ 9.  He also maintains that Chief Pomeroy refused union officials' request to establish a protocol to review members of the force who might not be able to participate in a drill for medical reasons.  Complaint at ¶¶ 14-16.

After participating in the drill, Kelley suffered a heart attack and, later, went out on disability leave and retired.  Complaint at ¶ 17.

At the time of his retirement, Kelly sought to be reimbursed for vacation time that he had to use for sick leave.  See id.  Chief Pomeroy and later the Personnel Board for Plymouth denied this request.  Complaint at ¶¶ 18-19.  Kelley asserts that the reasons for the denial included, among other things, that he reported to the IG that Chief Pomeroy used Police Department funds to reimburse himself for benefits that were not included as part of his income on the Police Department's budget.  Complaint at ¶¶ 21-22.  Kelley also alleges that the IG:

> investigated the matter and reported to [Plymouth] that the manner in which Pomeroy was compensating himself for educational benefits without declaring it under the line item budget area for compensation to him for income and without authorization per a by-law [sic] or written agreement with [Plymouth] was inappropriate and in violation of state law, and required [Plymouth] Town Meeting action to correct the situation

Complaint at ¶ 22.  Kelley argues, among other things, that Chief Pomeroy's refusal (1) to establish a protocol; and (2) to pay for his vacation time, were retaliatory in violation of the Commonwealth of Massachusetts' Whistle Blower Statute, G. L. c. 149, § 185.  Complaint at Count I.

    2.    <u>Document Subpoenas and Deposition Subpoenas</u>

On July 28, 2006, the IG received the following (1) Document Subpoena; see Document Subpoena; and (2) the O'Neil Deposition Subpoena.  see O'Neil Deposition Subpoena.  On August 9, 2006, the IG received (3) the Quinn Deposition Subpoena.  See Quinn Deposition Subpoena.

On August 14, 2006, the IG filed an amended motion to enlarge time to object to a third

party subpoena, which was granted by the Court on August 28, 2006, in an attempt to reach a

resolution with Kelley regarding these subpoenas.  On August 29, 2006, the IG sent Kelley a

letter preserving its objections to the Document Subpoena.  See Fed.R.Civ.P. 45(c)(2)(B).  That

same day, the IG served its motion to enlarge time to object to subpoenas and stay depositions,

again in order to reach a resolution, which was granted by the Court on September 19, 2006.  On

September 5, 2006, in accordance with the parties' agreement, the IG produced the privilege log

referenced in the August 29, 2006 letter.

The IG is able to provide Kelley with an affidavit that addresses the essential allegations

in the Complaint.[2]  See 945 C.M.R. § 1:04(3)(E).  Having been unable to reach an agreement,

however, the IG moves to quash these subpoenas.  In the alternative, the IG seeks a protective

order to either (1) modify the subpoenas; or (2) allow the IG to provide an affidavit in lieu of

complying with the subpoenas.

## **ARGUMENT**

I.    IG OFFICIALS WOULD BE FORCED TO VIOLATE STATE LAWS IF THEY
      PROVIDED DOCUMENTS AND TESTIFIED REGARDING THOSE
      DOCUMENTS

As a preliminary matter, the IG respectfully asks this Court to quash the Document

Subpoena and Deposition Subpoenas because the production of documents or testimony

regarding those documents would violate federal and state laws.  First, the Commonwealth's Fair

Information Practices Act ("FIPA"), M.G.L. c. 66A, §§ 2(c), 2(k), prevents the IG from turning

---

[2]Namely, that the IG is willing to provide details regarding its (1) receipt of a complaint
from Kelley; (2) investigation of the allegations including an interview with a former town
official; and (3) conclusion that there was no criminal violation.  The IG asks that this affidavit
be subject to a protective order so that it is only available to the Court and parties involved in
this proceeding.

over documents to the extent that the documents contain "personal data," even in response to

compulsory legal process, without the consent of the data subject(s) and an appropriate judicial

order.  See M.G.L. c. 66A, §§ 2(c), 2(k).  Second, the IG maintains that certain responsive

documents are privileged pursuant to Federal Rule of Civil Procedure 45 based upon its

authorizing statutes and federal common law.  See Fed.R.Civ.P. 45(d)(2).

A.    Requirements of FIPA

The documents reviewed by the IG contain personal information about individuals other

than Kelley.  The Inspector General remains concerned that the information sought by the

subpoena may be "readily associated" with particular individuals and is therefore, "personal

data" within the meaning of FIPA.  See M.G.L. c. 66A, § 1 (defining "personal data" as "any

information concerning an individual which, because of name, identifying number, mark or

description can be readily associated with a particular individual; provided, however, that such

information is not contained in a public record, as defined in M.G.L. c. 4, § 7 clause twenty-sixth

and shall not include intelligence information, evaluative, or criminal offender record

information, as defined in 940 C.M.R. 11.02.").  The IG, as a holder of "personal data," may not

disclose that data to a third party without the consent of the data subject(s) or an appropriate

judicial order.  See M.G.L. c. 66A, § 2(c); Allen v. Holyoke Hospital, 398 Mass. 372, 379

(1986).  The IG's failure to comply with the requirements of FIPA may expose it to liability for

monetary damages.  See Torres v. Attorney General, 391 Mass. 1, 4-5 (1984); Tivnan v.

Registrar of Motor Vehicles, 50 Mass. App. Ct. 96, 100 (2000); M.G.L. c. 258.  Moreover, in

this case, consent of the data subjects is potentially difficult to obtain because the data subjects

may or may not currently be employed by Plymouth.  Even assuming that the data subjects were

able to be notified, FIPA also requires the <u>consent</u> of data subjects, not merely notification.  <u>See</u>

M.G.L. c. 66A, § 2(c).  If the data subjects do not respond to notification, an appropriate judicial

order would still be required.

    2.   <u>Privileges</u>

    In addition, the Federal Rule of Civil Procedure 45 allows the IG to assert that its internal

documents are privileged and therefore, protected from discovery.  <u>See</u> Fed.R.Civ.P. 45(d)(2);

<u>see</u> <u>also</u> Fed.R.Civ.P. 26(b)(1) (providing in relevant part that "[p]arties may obtain discovery

regarding any matter, <u>not privileged</u> . . . .") (emphasis added.)

    First, the United States Supreme Court has held that a federal privilege may be created by

statute.  <u>See</u> <u>Baldridge v. Shapiro</u>, 455 U.S. 345, 360 (1982) (holding that "[i]t is well recognized

that a privilege may be created by statute.")  When it is possible to defer to a state-law privilege

at little or no cost to federal interests, the state-law privilege should be given effect.  <u>See</u>

<u>Northwestern Memorial Hosp. v. Ashcroft</u>, 362 F.3d 923 (7th Cir. 2004) ("[C]omity impels

federal courts to recognize state privileges where this can be accomplished at no substantial cost

to federal substantive and procedural policy.") (internal quotations omitted); <u>In re: Production of</u>

<u>Records to a Grand Jury</u>, 618 F. Supp. 440, 442 (D. Mass. 1985) (to same effect).

    Here, the IG's authorizing statutes create such a privilege.  In particular, these statutes

constrain the IG's ability to disclose its internal documents, explicitly requiring that "[a]ll

records . . . <u>shall be confidential</u>."  <u>See</u> M.G.L. 12A, § 13 (emphasis added.)  The IG's statutes

reflect the intent of the Ward Commission in recommending the establishment of the IG to

investigate government fraud and corruption.  See Volume 8 Final Report to the General Court of the Special Commission Concerning State and County Buildings, dated December 31, 1980 ("Ward Commission Report"), at 86.  The Ward Commission anticipated that the IG could only realize its investigative function if people who cooperated "are protected against unjust publicity and other violations of privacy by a mandate that the internal proceedings . . . be kept confidential."  Id. at 91.  Thus, as a result, the IG's authorizing statutes restrict its ability to produce its documents or to testify about those documents.

Finally, the IG also seeks to protect its internal documents based upon the qualified federal common law privileges for investigatory information; see, e.g., United States v. Lilly, 185 F.R.D. 113, 115 (D. Mass. 1999); and deliberative processes; see, e.g., Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs, 60 F. 3d 867 (1st Cir. 1995).  Here, while the IG's investigation of this matter has concluded, the IG's ability to conduct future investigations would be threatened if it were compelled to produce documents or testify in regards to those documents.  The IG could no longer assure the people who cooperated with their inspectors that these investigations would remain confidential.  Ultimately, the IG would be impeded in its ability to identify government fraud and corruption.  The IG is acting in the public interest, which upon balance is more important than the interest of a private litigant in discovery, especially when, as discussed further below, there are other sources of this information that more readily are available.  See Lilly, 185 F.R.D. at 115 (relying on Kattar v. Doe, Civ. A. No. 86-2206-MC, 1987 WL 11146, at *1 (D. Mass. Jan. 27, 1987) (providing that "'the Court must balance the public interest in nondisclosure against the need of the particular litigant for access

to the privileged information.")

Because depositions would inevitably require IG officials to discuss internal documents, the IG respectfully asks for both the Deposition and Document Subpoenas to be quashed.

II.     THIS COURT SHOULD QUASH THE DEPOSITION SUBPOENAS AS THEY
        PLACE AN UNREASONABLE BURDEN UPON THE IG

        A.     Requiring the Depositions of IG Officials Would Be Unduly Burdensome
               Given that The Information Sought Is Otherwise Available and Not
               Relevant to the Subject Matter of This Action.

Under Federal Rule of Civil Procedure 45, "the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies. . ." Fed.R.Civ.P. 45(c)(3)(A).  In addition, under Federal Rule of Civil Procedure 26, a party may obtain discovery only as to matters that are "relevant to the subject matter involved in the pending action," and the information sought to be discovered must appear "reasonably calculated to lead to the discovery of admissible evidence."  Fed.R.Civ.P. 26(b)(1).

In the deposition notices, Kelley does not indicate the subject matter of the depositions. See Deposition Subpoenas.  To the extent that the subject matter of these depositions can be gleaned from the Document Subpoena, Kelley seeks discovery relating to a broad range of issues:

> [A]investigation by the [IG] as a result of allegations against [Plymouth]
> by Kelley] in January of 2001, in his capacity as a Town Meeting Member and a
> member of the Plymouth Retirement Board regarding [Chief Pomeroy's] use of
> funds to reimburse himself for benefits that were not included as part of his
> income and should have been shown as income to him in his departmental budget.
> Kelley alleged Pomeroy was accepting compensation and not showing it in his
> budget in a manner that was prohibited by statute.

-8-

>    Any and all documents regarding any investigation of Chief Pomeroy and
>    his receipt of the so-called "Quinn Bill" funds; without the benefit of a contract or
>    Town by-law [sic] with Plymouth authorizing his receiving the aforesaid
>    payments and any documentation relating to action taken by the [IG] or
>    recommendation, instructions or directives to [Plymouth] to take action regarding
>    aforesaid payments to Chief Pomeroy.

See Attachments to Document Subpoena.  The Deposition subpoenas should be quashed because

the material that Kelley seeks to discover is otherwise available and is not relevant to the subject

matter involved in the pending action and is not reasonably calculated to lead to the discovery of

admissible evidence.  See Fed.R.Civ.P. 26(b)(1).

Here, the involvement of the IG is relevant only to the extent that it is alleged in Count I

that Chief Pomeroy and Plymouth took retaliatory action against Kelley who acted as a whistle-

blower pursuant to G. L. c. 149, § 185.  Complaint at Count I.  Kelley alleges further that Chief

Pomeroy and Plymouth refused to develop a protocol for the drill and to pay him for vacation

time because he complained to the IG about Chief Pomeroy's benefits.  See id.

Kelley does not need further information regarding the IG's investigation of a complaint.

Kelley through his own sworn testimony and/or affidavit can provide sufficient proof that he

filed a complaint with the IG or acted as a whistle-blower pursuant to G. L. c. 149, § 185.  In

other words, the information regarding the IG's receipt of a complaint is otherwise available

from Kelley himself.  See Church of Scientology of Boston v. IRS, 138 F.R.D. 9 (D. Mass.

1990) (prohibiting the deposition of an agency official because plaintiff failed to demonstrate

that the information was not otherwise available.)  Moreover, further discovery regarding the

IG's investigation of the complaint does not add anything relevant to Kelley's allegations that

the local defendants took retaliatory action against him because he acted as a whistle-blower

pursuant to G. L. c. 149, § 185.[3]  In the event that Kelley needs the IG to verify that he filed a

complaint and the IG investigated that complaint, the IG can provide an affidavit.   See 945

C.M.R. § 1:04(3)(e).

As a general matter, in order to be entitled to take the deposition of an administrative

decision-maker, the party seeking the deposition must make a "clear showing" that the

deposition is "essential to prevent prejudice or injustice," Wirtz v. Local 30, International Union

of Operating Engineers, 34 F.R.D. 13, 14 (S.D.N.Y. 1963), and that the deposition "would not

significantly interfere with the ability of the official to carry out his governmental

responsibilities." Martin v. Valley National Bank of Arizona, 140 F.R.D. 291, 314 (S.D.N.Y.

1991).  "[T]he time and energies of public officials [should] be conserved for the public's

business to as great an extent as may be consistent with the ends of justice in particular cases . . .

[F]ailure to place reasonable limits upon private litigants' access to responsible governmental

officials as sources of routine pretrial discovery would result in a severe disruption of the

government's primary function." Gomez v. City of Nashua, 126 F.R.D. 432, 434 (D.N.H. 1989)

(citation omitted).

Courts ordinarily do not compel the oral testimony of high-ranking government officials.

See, e.g., Church of Scientology, 138 F.R.D. at 13 (motion to quash deposition subpoena of

high-ranking I.R.S. official allowed); Gomez, 126 F.R.D. at 436 (motion to quash subpoena of

---

[3]Even assuming the truth of Kelley's allegations that the IG talked to Plymouth officials
in the course of the investigation of Kelley's complaint -- an allegation that is not supported by
the IG's file -- Plymouth, as a party to this proceeding can also provide sworn testimony and/or
affidavit regarding whether then current Plymouth officials communicated with the IG.  Again,
the information regarding any discussions between the IG and Plymouth is otherwise available.
See Church of Scientology of Boston, 138 F.R.D. 9.

-10-

Assistant Attorney General allowed); Alex v. Jasper Wyman & Son, 115 F.R.D. 156, 159 (D.

Me. 1986) (quashing deposition subpoenas of Department of Labor officials); Sykes v. Brown,

90 F.R.D. 79 (E.D. Pa 1981) (deposition subpoena of head of Defense Personnel Support Center

quashed).  "The policy behind prohibition of testimony is to conserve governmental resources

where the [government] is not a party to a suit, and to minimize governmental involvement in

controversial matters unrelated to official business."  Reynolds Metals Co. v. Crowther, 572 F.

Supp. 288, 290 (D. Mass. 1982) (dismissing contempt proceedings against OSHA officials for

refusal to testify in private civil action).  Drains on agency personnel's time and resources caused

by responding to private discovery can be sufficient reasons to quash deposition subpoenas.  See,

e.g., Gomez, 126 F.R.D. at 434.

Here, the mental processes of the IG officials whose depositions were noticed, have no

legal relevance to the discrete legal issues raised in the Complaint.  See Massachusetts

Federation of Teachers, AFT, AFL-CIO v. Board of Education, 436 Mass. 763, 776-77 n. 13

(2002) (providing, in relevant part, "[w]here statutory language clearly authorizes actions taken

by an agency, the actions are wholly lawful, and we need not look behind them to determine the

agency's motives" and declining to permit discovery on whether Governor or other officials

influenced agency's decisions).  The deposition notices, which are not relevant to the legal issues

raised, accordingly should be quashed.  See e.g., Sykes, 90 F.R.D. 77 (granting protective order

against deposition of agency official where plaintiff had not demonstrated that the official's

subjective impressions were relevant).  Furthermore, even if the mental processes of the IG's

office were relevant, Kelley makes no allegations that even remotely suggest that the IG's

receipt of his complaint and investigation was tainted by improper motives. Thus, he should not be permitted to use discovery as a "fishing expedition" to expand his allegations. See Baker v. Coxe, 52 F. Supp. 2d 244, 249 n. 5 (1999) (precluding depositions of agency officials where there were no allegation that they were improperly motivated.).

In sum, these depositions would undermine the IG's ability to investigate government fraud and corruption by requiring that it provide testimony in connection with its internal operations. See Church of Scientology, 138 F.R.D. at 12. The IG respectfully asks this Court to weigh the public interest in favor of quashing the Deposition Subpoenas especially since it is not a party to this litigation.

> B.    Requiring the IG Officials' Depositions Would Violate State Laws
> Requiring Confidentiality of the IG's Proceedings.

Finally, the integrity of the IG depends upon its ability to maintain the confidentiality of its internal proceedings. In particular, the Legislative purpose underlying the IG was "to create an apolitical, professional investigative body to support effective prosecution of fraud and corruption [in government] by the full array of forces at the public's disposal." See Ward Commission Report at 91. Given the importance of its role in investigating government fraud and corruption, the IG's internal proceedings are confidential. See M.G.L. 12A, § 13 (requiring that "[a]ll records . . . shall be confidential.") (emphasis added.); Ward Commission Report at 91. As noted above, the IG can realize its investigative mission only if it can assure people who cooperate that its internal proceedings are confidential. See Ward Report at 91. Thus, this Court should protect IG officials from providing testimony -- or producing documents -- especially when that testimony can be obtained elsewhere and is irrelevant to the subject matter of the

proceedings.  Given the importance to the public that the IG continue to be able to investigate

governmental fraud and corruption in a confidential manner, the balance here weighs in favor of

quashing the subpoenas.

## **CONCLUSION**

For the foregoing reasons, the IG respectfully requests that this Court quash the

Document Subpoena directed to the IG and the Deposition Subpoenas issued to Quinn and

O'Neil.  In the alternative, the IG seeks a protective order to either (1) to modify the subpoenas;

or (2) allow the IG to provide an affidavit in lieu of complying with the subpoenas.

Respectfully submitted,

OFFICE OF THE
INSPECTOR GENERAL,

By its counsel,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Christine A. Baily
Christine A. Baily, BBO #643759
Assistant Attorney General
Government Bureau
One Ashburton Place, Room 2019
Boston, Massachusetts 02108
(617) 727-2200, extension 2617

**Date:  September 28, 2006**

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(2), I hereby certify that I have conferred with Attorney Joseph R. Gallitano, counsel to the plaintiff Thomas M. Kelley, on multiple occasions including, but not limited to, a phone conversation on September 27, 2006, in and attempt to reach a resolution regarding the Document and Deposition Subpoenas referenced in this motion.

/s/ Christine A. Baily
Christine A. Baily, BBO #643759
Assistant Attorney General

**Date:  September 28, 2006**

-14-

# EXHIBIT A

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ MASSACHUSETTS

Thomas M. Kelley

V.

**SUBPOENA IN A CIVIL CASE**

Town of Plymouth, et al

Case Number:[1] 1:05-cv-10596-NMG

TO:  Keeper of the Records, Office of the Inspector General,
Gregory Sullivan, One Ashburton Place, Rm. 1311, 13th
Floor, Boston, MA  02108

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  Attorney Joseph R. Gallitano, 34 Main St. Ext., Suite 202, Plymouth MA  (508) 746-1500 | DATE AND TIME  8/16/2006 11:00 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Schedule A.
If said documents are produced certified prior to August 16, 2006, you need not appear in person to testify.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
|  | 7/20/2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Joseph R. Gallitano, Esq., Attorney for the Plaintiff
34 Main St. Ext., Suite 202, Plymouth MA  02360 (508) 746-1500

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number

A true copy Attest

Deputy Sheriff Suffolk County

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

## SCHEDULE A

Any and all documents, communications, notes, e-mails, memoranda, reports and or findings relating to an investigation by the Inspector General's Office as a result of allegations against the Town of Plymouth by Thomas M. Kelley in January of 2001, in his capacity as a Town Meeting Member and a member of the Plymouth Retirement Board regarding Chief Robert Pomeroy's use of funds to reimburse himself for benefits that were not included as part of his income and should have been shown as income to him in his departmental budget. Kelley alleged Pomeroy was accepting compensation and not showing it in his budget in a manner that was prohibited by statute.

Any and all documents regarding any investigation of Chief Pomeroy and his receipt of so-called "Quinn Bill" funds; without the benefit of a contract or Town By-Law with Plymouth authorizing his receiving aforesaid payments and any documentation relating to action taken by the Inspector General's Office or recommendation, instructions or directives to the Town of Plymouth to take action regarding aforesaid payments to Chief Pomeroy.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# EXHIBIT B

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF                    MASSACHUSETTS

Thomas M. Kelley

V.

Town of Plymouth, et al

### SUBPOENA IN A CIVIL CASE

Case Number: 1:05-cv-10596-NMG

A TRUE COPY ATTEST

DEPUTY SHERIFF

TO:  Edward Quinn, 13 Abigail Ave., Harwich, MA

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION   Attorney Joseph R. Gallitano, 34 Main St. Ext., Suite 202, Plymouth MA (508) 746-1500 | DATE AND TIME  9/6/2006 10:30 am |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE  7/20/2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Joseph R. Gallitano, Esq., Attorney for the Plaintiff
34 Main St. Ext., Suite 202, Plymouth MA  02360 (508) 746-1500

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

| PROOF OF SERVICE | | |
|---|---|---|
| | DATE | PLACE |
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.



JOSEPH R. GALLITANO
ATTORNEY AT LAW
34 MAIN STREET EXT. SUITE 202
PLYMOUTH, MA 02360

4123

5-7515-110

PAY
AMOUNT
OF

Seventy — six and 00/100

DATE 7/28/06

TO THE ORDER OF    Edward Glynn
Kelley v. Plymouth et al
Witness fee - Deposition

DESCRIPTION    Witness fee

CHECK NUMBER 4123

CHECK AMOUNT $ 76.00

Sovereign Bank
sovereignbank.com

Joseph R. Gallitano

⑂"004123⑂" ⑂:011075150⑂: 703000 18671 ⑂"

# EXHIBIT C

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF _____ MASSACHUSETTS _____

Thomas M. Kelley

V.

Town of Plymouth, et al

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  1:05-cv-10596-NMG

TO:   Inspector Daniel O'Neil, Office of the Inspector General, One
Ashburton Place, Rm. 1311, 13th Floor, Boston, MA 02108

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   Attorney Joseph R. Gallitano, 34 Main St. Ext., Suite 202, Plymouth MA (508) 746-1500 | DATE AND TIME   9/6/2006 1:30 am |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _J. R. Gallitano_ | 7/20/2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Joseph R. Gallitano, Esq., Attorney for the Plaintiff
34 Main St. Ext., Suite 202, Plymouth MA  02360 (508) 746-1500

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

A true ATTEST

Deputy Sheriff Suffolk County

AO88 (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# EXHIBIT D

DETECTING AND PREVENTING FRAUD

THE OFFICE OF INSPECTOR GENERAL

### Introduction

This section discusses the need to prevent and detect fraud, waste and abuse
in the expenditure of tax dollars. When the Commission began its investigation
there was no existing state agency which had or wished to perform that function.
Both the State Auditor and Comptroller have supported the establishment of a
quasi-criminal investigative unit which will identify those instances of fraud
which are presently undetected. Both officials decline to recommend that this
function be included within their agencies. The functions of prevention and
program review are not within the traditional roles of prosecutors on the state
or local level. It is to fill this function that the Office of Inspector General
has been established.

### Problems In Detection & Prevention

The Commonwealth was unable to conduct systematic comprehensive
investigations to determine the presence of fraud or abuse in a particular
project or program. There was neither the staff nor resources nor the authority
available to acquire all the necessary pieces of information and based on these
make the type of analysis that will reveal any evidence of fraud. Similarly,
those programs and procedures vulnerable to fraud were not analyzed from this
perspective. As a result, the state could never be sure of what it was paying
for. Fraudulent or abusive practices could flourish unchecked, increasing the
cost to the state for every public program.

A significant amount of fraud and illegal activities involve vendors and
those having contracts with the Commonwealth, and can only be detected through an
investigation which includes a thorough review of the books and records of those
doing business with the Commonwealth. In the area of construction, there is
fraud in the form of collusion between architects and suppliers, or between
architects and contractors; fraud in the form of materials used which do not
genuinely meet the standards set by contract specifications.

Limitations on the Role of State Auditor: The State Auditor was the
principal office in the Commonwealth responsible for an ongoing review of how the
state spends its money. The Commission has no reason to question the quality of
the State Auditor's work in this area; in fact, a great deal of the Commission's
basic information was gathered from the detailed reports of the state auditors

establishment, to recommend corrective action concerning such problems, abuses, and deficiencies, and to report on the progress made in implementing such corrective action.

### Recommendations & Legislation

The Commission has made every effort in drafting the legislation establishing the Office of Inspector-General to assure that the office will be independent and professional, that the Inspector General will cooperate closely with existing agencies, and that the Inspector General will not duplicate or infringe upon the work of existing agencies. The Office of Inspector General should result in lower program costs to state government through the deterrence of fraudulent conduct, the correction of wasteful management practices, and the collection of monies fraudulently lost to the Commonwealth. This will also mean a fairer and more hospitable climate for the many honest firms who wish to do business with the state.

In general terms, the act passed by the legislature provides for the establishment of an Office of Inspector General with the authority and responsibility for detecting and preventing "fraud and abuse in the expenditure of public funds" by certain departments, agencies or officers or employees of the Commonwealth. The Inspector General is given power to inspect books and accounts and other documents necessary to the performance of his functions, and would be authorized to use legal process when voluntary cooperation was withheld or when he believed that legal process would be necessary to obtain evidence before it was lost, destroyed or otherwise became unavailable. He would also be authorized to refer matters to the appropriate state law enforcement officers for prosecution of criminal offenses and to institute civil actions with the permission of the Attorney General. Public officials, business firms and individuals are protected against unjust publicity or other violations of privacy by a mandate that the internal proceedings in the Office of Inspector General be kept confidential.

The structure and powers of the Office of Inspector General were carefully crafted by this Commission to create an apolitical, professional investigative body to support effective prosecution of fraud and corruption by the full array of forces at the public's disposal. The legislature saw fit to establish this office only after 1) exempting themselves from investigation by the new Office, 2) injecting political partisanship into the Offices's controlling Inspector General Council, and 3) denying federal prosecutors access to the Inspector General's investigative findings.